IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV198 |
| | ) | |
| JERRY B. CLAYTON, DEBORAH P. | ) | |
| CLAYTON, ALLENE S. CLAYTON, | ) | |
| EDWIN L. CLAYTON, MARIA D. | ) | |
| CLAYTON, KEN A. CLAYTON, and | ) | |
| GAIL A. CLAYTON, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

THOMAS D. SCHROEDER, District Judge.

   This is a tax case in which the United States of America
(or "Government") seeks recovery of alleged unpaid taxes and
penalties.  Before the court is the motion of Defendant Jerry B.
Clayton ("Clayton") for judgment on the pleadings pursuant to
Federal Rule of Civil Procedure 12(c).  (Doc. 43.)  Clayton
contends that a general discharge from his previous bankruptcy
proceedings protects him from the complaint's allegations of
mere nonpayment as a matter of law.  For the reasons set forth
below, Clayton's motion will be denied conditionally upon the
Government's filing of an amended complaint; otherwise, in the
absence of an amended complaint, the motion will be granted to
the extent indicated.

## I.   BACKGROUND

The factual allegations of the complaint, which are taken as true for present purposes, along with any admissions contained in Clayton's answer as well as matters in the public record of which the court can take judicial notice, reveal the following factual history:

According to the Government, Clayton and his wife, Deborah, filed joint income tax returns for the years 2002 through 2007 that reported a total tax liability of over $1.8 million, yet they paid just a small fraction of that sum to the Government. (Doc. 1.)  The Internal Revenue Service ("IRS") levied a hefty tax bill against them for unpaid income taxes, and by February 16, 2009, had assessed their tax liability, including interest and penalties for late payment, at $1,964,889.[1]  (Id. ¶ 19.)

On March 11, 2010, the Government filed the present two-count complaint against Clayton and other members of his family to reduce Clayton's tax liability to a judgment (Count I) and to foreclose on property owned jointly by Clayton, his brothers, and their spouses to satisfy a tax lien undergirded by the tax liability in Count I (mislabeled as "Count III").  (Id.)  The Government's complaint contains no allegation of fraud or willful tax evasion and merely sets out facts indicating that

---

[1] Clayton and his wife have separated, and the Government obtained a default judgment against Deborah on September 1, 2010.  (Doc. 22.)

Clayton "failed to pay the United States the full amount owed." (Doc. 1 ¶ 18.) Before filing an answer, and faced with these and other debts (that Clayton argues were related to his wife's health and their children's education expenses), Clayton filed for Chapter 7 bankruptcy protection on May 22, 2010. (Doc. 44 at 2; Doc. 13.)

Clayton's bankruptcy filing automatically stayed this action. See 11 U.S.C. § 362. In the bankruptcy proceedings, Clayton listed the United States as a creditor, but neither Clayton nor the Government sought a determination from the bankruptcy court whether or not his tax liabilities were nondischargeable in bankruptcy based on any statutory exception. On September 2, 2010, the bankruptcy court entered a general discharge of Clayton's debts. Discharge of Debtor at 1, In re Clayton, No. 10-80899 (Bankr. M.D.N.C. Sept. 2, 2010), Doc. 31.

As Clayton's bankruptcy drew to a close, the United States moved to reopen this action (Doc. 19), which the court did on September 27, 2010 (Doc. 28). On October 15, 2010, Clayton answered the Government's complaint. (Doc. 30.) Clayton's answer raised several defenses, including claims that "[s]ome or all of [his] debt(s)" had been discharged in bankruptcy, that "[s]ome or all of the income tax liability" had been paid, and that the Government's claims for equitable relief were barred by the doctrines of waiver, estoppel, and unclean hands. (Id.)

3

Thereafter, Clayton resisted the Government's discovery requests relating to his possible willful failure to pay his tax liability on the grounds that the Government's complaint alleged mere nonpayment rather than willfully evasive behavior on his part. (Doc. 39 at 5-6.) On June 10, 2011, however, the Magistrate Judge overruled Clayton's objections, finding good cause to compel discovery responses from him. (Doc. 42.)

On July 29, 2011, Clayton filed the present motion for judgment on the pleadings (Doc. 43), arguing that because the Government neither contested the dischargeability of his tax liabilities in the bankruptcy proceeding nor asserted their nondischargeability in its complaint in this proceeding, he is entitled to a judgment on the pleadings (Doc. 44). The Government contends that it had no obligation to contest dischargeability either during the bankruptcy proceedings or in its complaint in this action, and it urges the court to deny Clayton's motion. (Doc. 47.)

## II. ANALYSIS

Courts apply the same standard for motions for judgment on the pleadings under Rule 12(c) as for motions to dismiss made under Rule 12(b)(6). Independence News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir.), cert. denied, 130 S. Ct. 507 (2009). The court assumes the factual allegations in the complaint to be true and draws all reasonable factual

4

inferences in the plaintiff's favor as the nonmoving party. Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Unlike on a Rule 12(b)(6) motion, however, on a Rule 12(c) motion the court may consider the answer as well. Rinaldi v. CCX, Inc., No. 3:05-CV-108, 2008 WL 2622971, at *2 n.3 (W.D.N.C. July 2, 2008). The factual allegations of the answer "are taken as true only where and to the extent they have not been denied or do not conflict with the complaint." Jadoff v. Gleason, 140 F.R.D. 330, 331 (M.D.N.C. 1991).

"The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." Smith v. McDonald, 562 F. Supp. 829, 842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd, 472

5

U.S. 479 (1985); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368, at 223, 248 (3d ed. 2004).

Clayton contends that he is entitled to judgment on the pleadings because the United States failed to raise its claim as an exception to discharge during his bankruptcy proceeding and has not alleged grounds in the complaint to avoid the general discharge, now that it is entered. In support, Clayton raises several interrelated arguments. First, he argues that the Government's failure to contest the dischargeability of his tax debts in the bankruptcy proceedings prevents it from raising that theory now because of the Bankruptcy Code's design to give debtors a "fresh start." (Doc. 44 at 10-11.) Second, Clayton contends that because the Government failed to plead fraud or willful tax evasion in its complaint, it should not be permitted to continue developing discovery related to that claim. (Doc. 44 at 11-12.) Third, he contends that the Government's complaint fails to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b), and thus the Government's present assertion that he evaded his taxes fraudulently or willfully is fatally defective. (Doc. 44 at 8-9.) And fourth, he argues that the Government's failure to amend its pleadings, post-discharge, to allege an exception to his discharge on

grounds of fraud or willfulness entitles him to judgment. (Doc. 44 at 6-8, 9-11.)

The Government opposes Clayton's motion. Preliminarily, it declares his Rule 9(b) fraud argument to be moot because it is not proceeding on a claim of fraud. (Doc. 47 at 5.) In addition, it contends that the Bankruptcy Code imposes no affirmative duty on it to contest the dischargeability of Clayton's tax debts during the bankruptcy proceedings. Rather, the Government argues, it may pursue claims under § 523(a)(1)(C) against individuals who willfully evaded paying their taxes prior to entering bankruptcy even though they have received a general discharge of debts. And it may do so, the Government argues, without having to specifically plead a willful evasion claim. As such, the Government concludes, Clayton is not entitled to judgment on the pleadings and the case should proceed to trial.

A brief overview of the United States Bankruptcy Code will put the parties' arguments in context. Generally, when a person files for Chapter 7 bankruptcy protection, the process culminates in a discharge order, which eliminates certain of the debtor's debts that existed at the time of filing. See 11 U.S.C. § 727. Once a discharge has been issued, it "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a

7

personal liability of the debtor." 11 U.S.C. § 524(a)(2). Some debts that existed at the time of the bankruptcy filing are unaffected by § 524(a)(2)'s injunction, however, and they include those set forth in 11 U.S.C. § 523(a). One such exception is for unpaid taxes "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." § 523(a)(1)(C).[2] The creditor, in this case the Government, has the burden of proving by a preponderance of the evidence that an exception listed in § 523(a) renders a debt nondischargeable. See Grogan v. Garner, 498 U.S. 279, 287-88 (1991); Kubota Tractor Corp. v. Strack (In re Strack), 524 F.3d 493, 497 (4th Cir. 2008).

With this understanding, the court can easily resolve three of Clayton's arguments.

First, to the extent Clayton argues that the United States had an obligation to contest nondischargeability under § 523(a)(1)(C) in his bankruptcy proceeding, he is mistaken. It is true that "a chapter 7 discharge eliminates the debtor's

_____

[2] Section 523(a)(1)(C) states:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
>     (1) for a tax or custom duty –
>           * * *
>           (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

11 U.S.C. § 523(a)(1)(C).

liability on most kinds of debts." Sayal v. Faruque (In re
Faruque), No. 07-13375-SSM, 2009 WL 2211210, at *4 (Bankr. E.D.
Va. July 20, 2009). Debts falling within § 523(a)(1) are not
among them, however. Id. Moreover, § 523(a)(1) claims do not
lie exclusively within the jurisdiction of the bankruptcy
courts, Resolution Trust Corp. v. McKendry (In re McKendry), 40
F.3d 331, 335 & n.3 (10th Cir. 1994), and thus the Government
may elect to litigate them in the bankruptcy court or wait to do
so in another court having jurisdiction over the creditor's
claim, Ung v. Boni (In re Boni), 240 B.R. 381, 386 (B.A.P. 9th
Cir. 1999); In re Jackson, No. 05-49574-JBR, 2006 WL 1581444, at
*2 (Bankr. D. Mass. June 6, 2006). Consequently, unless the
debtor or Government elects to litigate the nondischargeability
of a debt under § 523(a)(1)(C) in the bankruptcy court, the
claim survives the bankruptcy, is unaffected by the discharge,
and may be brought later in another court. 11 U.S.C. § 727(b);
In re Thompson, 207 B.R. 7, 10 (Bankr. M.D. Fla. 1996);
Galbreath v. Ill. Dep't of Revenue (In re Galbreath), 83 B.R.
549, 551 (Bankr. S.D. Ill. 1988) (noting that "the debtor may
seek a determination that a particular debt is dischargeable to
avoid the possibility of an enforcement action in [a non-
bankruptcy] court following the bankruptcy proceeding"). As a
tactical matter, the Government "may wait until the bankruptcy
discharge is invoked as a defense to its collection efforts, and

then prove a factual basis for the tax fraud exception [under § 523(a)(1)(C)] in the collection proceedings." <u>Console v. Comm'r</u>, 291 F. App'x 234, 237 (11th Cir. 2008) (per curiam) (unpublished). It is evident, therefore, that the Government's decision not to contest dischargeability of Clayton's taxes in his bankruptcy proceeding does not foreclose its present claim that the tax debts are nondischargeable under § 523(a)(1)(C).[3]

Second, Clayton's argument that the court should prohibit the United States from proceeding with discovery related to its § 523(a)(1)(C) claim is baseless. Clayton made this precise argument to the Magistrate Judge during prior discovery proceedings in this case (Doc. 39 at 7-10), but he lost and chose not to timely object to the Magistrate Judge's ruling. <u>See</u> 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Although a district court retains the authority to review all of a magistrate judge's determinations, <u>see</u> <u>Schur v. L.A. Weight Loss Ctrs., Inc.</u>, 577 F.3d 752, 760-61 (7th Cir. 2009), the Supreme Court and the Fourth Circuit have recognized that "'Congress would not have wanted district judges to devote time to

---

[3] Clayton's contention that this results in unfairness to him rings hollow. Under the Bankruptcy Code, Clayton, too, could have filed an adversary proceeding to force resolution of the dischargeability of his tax debts. Beyond that, any claim of unfairness should be directed to his elected Congressional representatives who passed the legislation. <u>See</u> <u>Lang v. Comm'r</u>, 289 U.S. 109, 113 (1933) (explaining that so long as legislation is permitted by the Constitution, arguments about the fairness of a statute's burdens must be directed at Congress rather than the courts).

reviewing magistrate's reports except to the extent that such review is requested by the parties or otherwise necessitated by Article III of the Constitution,'" <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 200 (4th Cir. 1997) (quoting <u>Thomas v. Arn</u>, 474 U.S. 140, 153 (1985)). Clayton has therefore waived this argument, and the court declines to revisit his discovery objections here.

Third, Clayton's contention that the Government must allege fraud with particularity under § 523(a)(1)(C) is inapposite. While it is true, as Clayton contends, that allegations of fraudulent tax evasion must be pleaded with specificity, <u>see</u> <u>Roper v. Barclay</u> (<u>In re Roper</u>), 266 B.R. 418, 421 (Bankr. E.D. Ark. 2001),[4] proof of fraud is not required when the United

---

[4] The <u>In re Roper</u> opinion, relied upon by Clayton, used broad language in reaching its holding that claims under § 523(a)(1)(C) must be pleaded with particularity. 266 B.R. at 420-21 ("[A]s the party raising an issue which is essentially one of fraud, and objecting to dischargeability on that basis, the state's [sic] is required to plead the basis for its assertion that the debtor willfully evaded the tax obligation with specificity."). <u>In re Roper</u>, however, did not address the distinction between the two bases of liability under § 523(a)(1)(C), one of which is "aimed at a debtor who has 'made a fraudulent return'" and the other of which is "aimed at one who has 'willfully attempted in any manner to evade or defeat' his income taxes." <u>See</u> <u>United States v. Fretz</u> (<u>In re Fretz</u>), 244 F.3d 1323, 1327 (11th Cir. 2001); <u>see also</u> <u>In re Birkenstock</u>, 87 F.3d 947, 951 (7th Cir. 1996) (noting the distinction). To show that an individual has willfully evaded his taxes, the "United States must simply meet the test for 'civil willfulness,' which is a lesser standard than that of fraud." <u>United States v. Jacobs</u> (<u>In re Jacobs</u>), No. 305CV252J99HES, 2006 WL 2691516, at *15 (M.D. Fla. Sept. 19, 2006), <u>aff'd</u>, 490 F.3d 913 (11th Cir. 2007). In fact, "[a] debtor's attempts to evade or defeat his tax obligations is considered 'willful' for purposes of § 523(a)(1)(C) if it is done 'voluntarily, consciously or knowingly, and intentionally.'" <u>Id.</u> at *14 (quoting <u>In re Fretz</u>, 244 F.3d at 1330). And under Rule 9(b), "[m]alice, intent, knowledge, and other

States pursues the theory that a debtor willfully evaded tax payments, see United States v. Fretz (In re Fretz), 244 F.3d 1323, 1330 (11th Cir. 2001). Rule 9(b)'s heightened pleading requirements simply do not apply, therefore, to § 523(a)(1)(C) exception claims where the Government does not charge fraud. Here, the Government has expressly stated that it does not contend that Clayton filed fraudulent tax returns and, instead, charges that he attempted to willfully evade payment of his taxes. (Doc. 47 at 5.) Accordingly, the Government has no obligation to plead a claim under the willful evasion prong of § 523(a)(1)(C) with the particularity required by Rule 9(b).

This leaves for resolution Clayton's final argument – that he is entitled to judgment because the Government's complaint fails to allege any ground for recovery that survives his bankruptcy discharge, which he raised as a defense in his answer. Now that the discharge (of which he invites the court to take judicial notice) has been entered by the bankruptcy court, Clayton argues, the Government's complaint alleging mere nonpayment is fatally defective under Twombly because it fails to plead any facts to support an exception to discharge. This is so, he contends, despite the Government's explanation in its Federal Rule of Civil Procedure 26(f) report that it intends to

---

conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 n.3 (2002).

12

proceed on a theory of willful evasion under § 523(a)(1)(C). (Doc. 44 at 6-8.)

The Government relegates its response to this argument to a terse, one-sentence footnote in which it contends that "the United States may assert that section 523(a)(1)(C) applies without amending its complaint and may seek to prove a factual basis for its assertion when Clayton raised his bankruptcy discharge as a defense." (Doc. 47 at 5 n.2 (citing Console, 491 F. App'x at 237).) Otherwise, the Government seems to premise its argument on its related contention that Clayton's federal tax debts were unaffected by the bankruptcy court's general discharge and remain viable for collection, subject to Clayton's affirmative defense. Implicit in the Government's argument is the contention that because discharge is an affirmative defense, the Government has no duty to affirmatively plead an exception in its initial complaint. To be charitable, the Government appears to have considered the pleading issue resolved after it addressed it (albeit fleetingly) in its reply brief during its previous effort to compel discovery from Clayton. At that time, the Government dismissed Clayton's pleading argument as "nonsensical" and contended that it "has a right to take discovery on Clayton's defenses" and "can litigate this issue now." (Doc. 41 at 2-3 & n. 1.) Of course, the Magistrate Judge

13

was then addressing only the Government's motion to compel discovery, which he granted.

The court is not persuaded that Clayton's contention that he is entitled to judgment on the pleadings, at least to the extent of the Government's proffered claim for willful evasion, can be so cavalierly dismissed, especially based on the limited authority the Government has provided the court.

The court begins with the proposition that Federal Rule of Civil Procedure 8 requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement is not "onerous" and requires only that a plaintiff "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 252 (4th Cir. 2005) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A plaintiff need not allege a prima facie case, but must "'set forth facts sufficient to allege each element of his claim.'" Chao v. Rivendell Woods, Inc., 415 F.3d 342, 347 (4th Cir. 2005) (quoting Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)).

Here, the Government points out that its complaint initially fulfilled the limited requirements of Rule 8 when it was filed. That is true. At that point, after all, the Government was merely seeking to collect money owed it by

Clayton. The complaint alleged that its suit against Clayton was authorized by a delegee of the Secretary of the Treasury of the United States and brought at the discretion of the Attorney General of the United States, as required by 26 U.S.C. § 7401. In addition, it alleged that Clayton owed certain amounts to the IRS that had not been paid. Finally, to the extent the Government intended to foreclose upon property subject to tax liens, it alleged that tax liens had arisen against Clayton's property. See United States v. Ledford, No. 07-cv-01568-WYD-KMT, 2010 WL 749843, at *7 (D. Colo. Mar. 3, 2010). Since none of Clayton's debts had been discharged in bankruptcy at the time of the Government's complaint, the Government had no obligation to plead an exception to discharge in bankruptcy (e.g., that Clayton had willfully evaded his tax obligations).

Of course, just two months after the Government filed its complaint, Clayton changed the course of this lawsuit by filing for bankruptcy protection and subsequently asserted his discharge as a defense. The Government does not contend that its complaint alleges sufficient facts to support its present theory that Clayton willfully evaded his obligation to make income tax payments under § 523(a)(1)(C). The central question, therefore, is whether, once Clayton's answer raised his discharge as a defense, the issues were properly joined to permit the Government to proceed on its willful evasion claim,

15

or whether Clayton's defense bars the claims presently alleged in the complaint as a matter of law.

At the time Clayton filed his answer in this case, "discharge in bankruptcy" was a specifically enumerated affirmative defense under Rule 8. Fed. R. Civ. P. 8(c)(1) (2010) (amended 2010); see also Mickowski v. Visi-Trak Worldwide, LLC, 415 F.3d 501, 506 (6th Cir. 2005); 4 Collier on Bankruptcy ¶ 523.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011).[5] "An affirmative defense is the 'defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true.'" Emergency One, Inc. v. Am. Fire Eagle Engine Co., 332 F.3d 264, 271 (4th Cir. 2003) (quoting Saks v. Franklin Covey Co., 316 F.3d 337, 350 (2d Cir. 2003)). When a defendant raises an affirmative defense in his answer, the complaining party has no obligation to respond. See, e.g., Fed. Deposit Ins. Corp. v. First Nat'l Fin. Co., 587 F.2d 1009, 1012 (9th Cir. 1978) (noting that "[t]he affirmative defense alleging the agreement not to enforce the notes was necessarily first brought forth in the answer," to which "[n]o reply . . . is

---

[5] Effective December 1, 2010, Rule 8(c) was amended to remove "discharge in bankruptcy" from the list of affirmative defenses. Fed. R. Civ. P. 8(c)(1) 2010 Amendments. The notes accompanying the amendment explain that 11 U.S.C. § 524(a)'s automatic injunction against the pursuit of a discharged debt makes listing discharge in bankruptcy as an affirmative defense "confusing" because the injunction applies automatically to claims not exempted from discharge under § 523(a). Id.

allowed[] unless ordered by the court."). In fact, under Rule 7(a), a reply to an answer is not permitted unless the court orders one. Fed. R. Civ. P. 7(a). Instead, Rule 8(b)(6) states that where no responsive pleading is required, an allegation raised in an answer is considered denied or avoided. Fed. R. Civ. P. 8(b)(6). Thus, when Clayton filed his answer with an affirmative defense, the Government had no ability, much less an obligation, to file a reply absent permission from the court. See Fed. R. Civ. P. 7(a). Neither party moved for this court to require a response, and this court did not order one. As a result, Clayton's affirmative defense stands denied or avoided under Rule 8(b)(6).

But this begs the question of whether Clayton's affirmative defense is adequate as a matter of law to require judgment on the pleadings in his favor. Neither party has cited a case on point. The court's own research, however, points decidedly in one direction.

Section 523(a)(1)(C), as it relates to willful evasion, contains both conduct and mental state requirements. Griffith v. United States (In re Griffith), 206 F.3d 1389, 1396 (11th Cir. 2000) (en banc). Proving that the taxpayer engaged in sufficient conduct for an exception to apply requires more than a mere showing of a failure to pay income taxes. In re Fretz, 244 F.3d at 1328-29. Demonstrating the mental state requirement

17

requires the Government to show by a preponderance of the evidence that the debtor (1) had a duty to file income tax returns, (2) knew he had such a duty, and (3) voluntarily and intentionally violated that duty. United States v. Fegeley (In re Fegeley), 118 F.3d 979, 984 (3d Cir. 1997). Most courts appear to hold that if a creditor files an adversary proceeding in bankruptcy and seeks a determination of nondischargeability under § 523(a)(1)-(19), he must plead and prove the exception to state a claim. See In re Faruque, 2009 WL 2211210, at *4 (finding that a creditor's post-chapter 7 discharge complaint seeking to contest the dischargeability of certain debts failed to state a claim because it failed under Twombly to plausibly plead any of § 523(a)'s exceptions to discharge); see also In re Roper, 266 B.R. at 421-22 (granting the state leave to amend its answer to plead the basis for its assertion that the debtor's tax debts were nondischargeable under § 523(a)(1)(C)). But see Landi v. United States (In re Landi), 289 B.R. 173, 175 (Bankr. M.D. Fla. 2002) (rejecting without analysis debtors' argument that the court had erred by determining nondischargeability under § 523(a)(1)(C) where the Government did not "specifically plead" it), aff'd, 316 B.R. 363 (M.D. Fla. 2004), aff'd, 138 F. App'x 300 (11th Cir. 2005) (unpublished table decision). As Clayton points out, therefore, had the Government sought to determine the nondischargeability of his federal tax debts in

the bankruptcy proceeding, it would have borne the burden of pleading and proving the elements of a § 523(a)(1)(C) exception to discharge. The Government has not disputed that it must prove willful evasion but has not articulated any reason, legal or otherwise, why it should be subjected to a lesser pleading requirement now.

The Government relies solely on an unreported case, Console, to relieve it of the obligation to plead the claim it now raises. In particular, the Government leans heavily on that court's statement that the IRS need not appear in the bankruptcy proceeding to pursue its § 523(a)(1)(C) claim but may wait until "the bankruptcy discharge is invoked as a defense to its collection efforts, and then prove a factual basis for the tax fraud exception in the collection proceedings." Console, 291 F. App'x at 237. But the court was only affirming the basic principle that a general discharge does not address a § 523(a)(1)(C) exception, which the IRS is free to prove subsequently; it did not relieve the IRS of its obligation to plead its claim.[6]

---

[6] The Government's related response to Clayton's argument to dismiss any unarticulated fraud claim is revealing. The Government acknowledges that were it to bring a fraud claim, it would have to plead it and also meet Rule 9(b)'s enhanced pleading requirements. (Doc. 47 at 5 ("Because the United States is not asserting a claim of fraud, the heightened pleading requirements contained in Fed. R. Civ. P. 9(b) do not apply.").) The Government does not explain why it would have to plead a fraud exception under § 523(a)(1)(C) but not a

The Government also contends that Clayton confuses "discharge" with "dischargeability." (Doc. 47 at 2-3.) But this is plainly wrong. Neither party is attacking the propriety of the chapter 7 discharge order (e.g., whether it had been obtained by fraud). Clayton simply contends that the complaint's basis for recovery is barred by the general discharge in his favor – a question of discharge – and the Government contends that its claim does not fall within the general discharge – a question of dischargeability. See In re Faruque, 2009 WL 2211210, at *3 (noting that the plaintiff, who sought to avoid the effect of a discharge order but whose complaint failed to state a claim under § 523(a), "has confused the concepts of discharge and dischargeability").

Turning to the Government's complaint, the court is simply unable to glean a willful evasion claim from its allegations. The allegation that Clayton filed tax returns for the relevant years plausibly supports the elements of duty to file and knowledge of the duty. However, even with the understanding that intent can be alleged generally, the allegation that Clayton "failed to pay" his taxes and assessments (Doc. 1 ¶ 18) fails to plausibly state a claim that he voluntarily and intentionally violated his duty. Consequently, in taking

---

willful evasion claim (albeit not under Rule 9(b)'s enhanced standard).

judicial notice of Clayton's general discharge in his bankruptcy proceeding, see Gilbert Land Dev., Inc. v. Wells, No. 10-2246, 2011 WL 1701800, at *1 n.1 (C.D. Ill. Mar. 9, 2011) (taking judicial notice of state court orders not attached to complaint on motion to dismiss because they are a matter of public record), accepted by No. 10-2246, 2011 WL 1705008 (C.D. Ill. May 4, 2011), it is plain that Clayton's affirmative defense of general discharge meets the Government's claim of mere nonpayment as a matter of law for tax years 2002 through 2006.[7] To hold otherwise, as the Government would have it, would remove Rule 12(c) (and probably Rule 12(b)(6) as well) from the rules for many honest debtors where the IRS alleges and seeks to pursue only nonpayment of taxes that otherwise meet no exception. Such a conclusion would be unnecessary to preserve the § 523(a)(1)(C) exception and would run counter to the "fresh start" provisions of the Bankruptcy Code. In re Strack, 524 F.3d at 497 (noting that Congress has provided "several limited exceptions to this presumption of dischargeability, which we must construe narrowly 'to protect the [Bankruptcy Act's]

---

[7] Though neither the Government's Rule 26(f) report nor its response to Clayton's motion articulates any basis for recovery against Clayton other than § 523(a)(1)(C), it appears that the complaint sufficiently states a claim for nondischargeability of Clayton's 2007 income tax obligation under § 523(a)(1)(A), which excepts from discharge income tax debts due within three years of the filing of the bankruptcy petition. 11 U.S.C. §§ 523(a)(1)(A), 507(a)(8); see Lewis v. United States (In re Lewis), 151 B.R. 140, 141 (Bankr. W.D. Tenn. 1992). The remainder of the income tax debts sought, at least on the face of the complaint, exceeds the window of that exception.

purpose of providing debtors a fresh start'" (alteration in original) (quoting Foley &. Lardner v. Biondo (In re Biondo), 180 F.3d 126, 130 (4th Cir. 1999))). It especially makes little sense here because the Government is put on notice of the entry of an order of discharge and seeks to proceed on a theory of wrongful conduct under an express exception in § 523(a)(1)(C).

Given the history of this case, however, the court is convinced that immediate dismissal, as Clayton urges, would be improper. Clayton has been on notice of the Government's theory of recovery for over a year, can claim no prejudice, and waited to file the present motion over eight months after he filed his answer and six months after the expiration of the time for amendments to the pleadings set forth in the court's Order approving the Rule 26(f) report. (See Doc. 32 at 2; Doc. 43.) There is some reason to believe, therefore, that Clayton was lying in wait to file the motion. Furthermore, the Government may have (not unreasonably) considered the pleading issue implicitly rejected once the Magistrate Judge enforced the Government's motion to compel discovery.

Where an affirmative defense appears to meet the allegations of the complaint as a matter of law, the court has at least two available options other than dismissal. One option is to grant the Government leave to amend, which should be freely given when justice so requires. Fed. R. Civ. P.

15(a)(2). Indeed, this appears to have been the Government's view in other litigation because when faced with a nearly identical scenario, the Government sought just such a course. See, e.g., Plaintiff United States' Unopposed Motion for Leave to File Second Amended Complaint, United States v. Beninati, 438 B.R. 755 (D. Mass. 2010) (No. 06-CV-11296-NMG), Doc. 22 (containing United States' motion, post-petition but prior to the debtor's answer, seeking leave to amend its pre-petition complaint to assert nondischargeability of tax debts under § 523(a)(1)(C)). Why the Government did not seek an amendment here is unclear.

Or, as another option, there is some authority that the court may order the Government to file a reply under Rule 7 to articulate its claim to avoid Clayton's affirmative defense alleged in his answer. See Schultea v. Wood, 47 F.3d 1427, 1432-33 (5th Cir. 1995) (en banc) (permitting § 1983 plaintiff to file a reply under Rule 7 to tailor his claims of maliciousness to meet an assertion of qualified immunity in an affirmative defense by a defendant sued in his individual capacity); 2 West's Federal Forms, District Courts, Civil § 1412 (5th ed. 2006) (form reply to affirmative defense of discharge in bankruptcy).

For the reasons noted above, the court determines that the allowance of an amendment is the better practice. See, e.g., In

23

re Griffith, 206 F.3d at 1392 n.1 (affirming the panel's rejection of the creditor's contention that the bankruptcy court abused its discretion in allowing the Government to amend to assert specifically its § 523(a)(1)(C) counterclaim); In re Roper, 266 B.R. at 421-22 (granting leave to amend answer to articulate § 523(a)(1)(C) exception claim); cf. Hassan v. United States (In re Hassan), 301 B.R. 614, 619 & n.2 (S.D. Fla. 2003) (rejecting debtors' argument – that the bankruptcy court erred in entering judgment for the IRS where neither the debtors' complaint nor the IRS' answer in the bankruptcy court adversary proceeding raised exceptions under § 523(a)(1)(C) – because the willful evasion claim had been stipulated and agreed to by the parties in the pretrial order, thus superseding the pleadings).

Accordingly, the Government will be permitted ten (10) days within which to amend its complaint to articulate its claim for willful evasion under 11 U.S.C. § 523(a)(1)(C).  In the absence of such amendment, the court will grant Clayton's motion for judgment on the pleadings for tax years 2002 through 2006. Because the parties have long been aware of the Government's willful evasion theory and have conducted discovery on it, no change is anticipated at this time in the current schedule or trial date.

## III. CONCLUSION

For the reasons set forth above, therefore,

IT IS ORDERED that the Government has ten (10) calendar days within which to file an amendment to its complaint to set forth its claim under 11 U.S.C. § 523(a)(1)(C). If the Government does so, Clayton's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Doc. 43) will be deemed DENIED, and Clayton will have ten (10) calendar days from the filing of any amended complaint within which to file an answer; if the Government fails to timely file an amended complaint, the court will grant Clayton's motion for judgment on the pleadings as to claims for tax years 2002 through 2006.


                                    /s/   Thomas D. Schroeder
                                 United States District Judge

December 13, 2011